**Wayne Bryan HAWTHORNE**

v.

**UNITED STATES of America.**

**No. 91–142–CR–T10(b).**

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 2, 1992.

John A. Baldwin, Fern Park, Fla., David Brooks Kundin, Esq., Tallahassee, Fla., for plaintiff.

Monte Richardson, Asst. U.S. Atty., Tampa, Fla., for defendant.

## MEMORANDUM

MORTON, Senior District Judge.

## I. INTRODUCTION

Before the court is a petition for writ of habeas corpus filed in behalf of Wayne Hawthorne. The petitioner entered a plea of guilty to one count of being a felon in possession of a firearm and was sentenced under 18 U.S.C. § 922(g). *United States v. Hawthorne*, No. 91–142–Cr.–T–10(b) (M.D.Fl. Aug 7, 1991). He now argues that his prior conviction cannot serve as the basis for this conviction; he proposes that for purposes of § 922(g) he has not had a prior conviction as defined in § 921(a)(20).

Under 18 U.S.C. § 922(g)(1), it is unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." [1]

Section 921(a)(20) defines what constitutes a conviction for such a crime for purposes of § 922(g)(1):

Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

On February 22, 1979, the petitioner received from the State of Florida a "Certificate of Restoration of Civil Rights" which stated, in part, that "[the petitioner] is restored to all civil rights in this State, except the specific authority to possess or own a firearm." The issue before the court, then, is whether that language satisfies the statute's requirement that the restoration of civil rights "expressly provid[e] that the person may not ship, transport, possess, or receive firearms." The petitioner argues that the exact language quoted must be used.

## II. DISCUSSION

### A. Principles of Statutory Interpretation.

■ The law is what the legislature intends it to be. The function of this court in applying a statute is to determine the legislative intent as expressed in the body of the statutory law. It is a settled principle of statutory interpretation that a statute is open to construction only where the court has identified an ambiguity in the language. In the absence of ambiguity, the plain meaning of the language is conclusively presumed to bear out the legislative intent except in rare and exceptional cir-

---

**1.** The court will use the shorthand "convicted felon" to refer to one who has been convicted of a crime punishable by imprisonment for a term exceeding one year.

cumstances, such as in the face of a clearly expressed legislative intent to the contrary. *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980); *United States v. American Trucking Assocs.*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Where an ambiguity exists, however,. legislative intent can be established by reference to sources other than the language of the statute itself. As an aid in determining the legislative intent in amending § 921(a)(20), it is proper to look to the purposes sought to be served and to interpret provisions of the statute so as to serve them.[2]

The statute is not clear by its terms as to whether it requires that the exact language of the statute be used in order to keep one within the definition of a convicted felon.

B. Congress' Intent in Amending § 921(a)(20).

■ Congress recently amended the definition of *"conviction* of a crime punishable by imprisonment for a term exceeding one year."[3] Senate Report 98–583 contains a discussion of the purposes to be served by the amendment:

> [The amendment] requires that a "conviction" must be determined in accordance with the law of the jurisdiction where the underlying proceeding was held.... [It] would exclude from such conviction any for which the person has received a pardon, civil rights restoration, or expungement of the record. Existing law incorporates a similar provision with respect to pardons in 18 U.S.C. app. 1202, relating to possession of firearms, but through oversight does not include any conforming provision in 18 U.S.C. 922, dealing with their purchase or receipt. This oversight, which result-

ed in a ruling that a state pardon does not permit a pardoned citizen to receive or purchase a firearm, despite the express provision in the pardon that he may possess it, would be corrected. *In the event that the official granting the pardon, restoration of rights, or expungement of record does not intend that it restore the right to firearm ownership, this provision honors that intent as expressly provided in the order or pardon.*

*Id.* at 7 (emphasis added) (footnotes omitted).

Before this amendment, the Supreme Court had held in *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), that federal law supplied the definition of conviction, so that the petitioner was not entitled to a firearms dealer's license even though a prior felony conviction had been expunged by the state. The Court stated that "we have found nothing in the legislative history of Title IV or related federal firearms statutes that suggests, even remotely, that a state expunction was intended automatically to remove the disabilities imposed by sections 922(g)(1) and (h)(1)." *Id.* at 119, 103 S.Ct. at 995, 74 L.Ed.2d at 858. Significantly, the senate report cites *Dickerson* as one of the cases sought to be overruled by the amendment. Sen.Rep. 98–583 at 7 n. 16.

The general intent, then, is to require federal law to track state law in the distinction between persons who remain under a firearm disability and those who do not. The purpose of having federal law track state law, in turn, is to avoid the harm that was done by anomalous rulings in which persons whom the state had restored to their civil rights to the extent that they were no longer under *state* firearm restrictions, were nonetheless being prosecuted under federal law[4] or were being denied

---

**2.** *See generally* 73 Am.Jur.2d *Statutes* §§ 145, 146, 194, 195 (1974). *See also* R. Dickerson, The Interpretation and Application of Statutes (1975).

**3.** Amended by § 101 of the 1986 Firearms Owners' Protection Act, Pub.L. 99–308, 100 Stat. 449.

**4.** *See United States v. Engesser*, 788 F.2d 1401 (9th Cir.) *cert. denied* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986) (Montana's restoration of civil rights, including right to bear arms, did not preclude federal government from regulating defendant's possession of firearm as convicted felon); *United States v. Allen*, 699 F.2d 453 (9th Cir.1982) (statutory restoration of

firearm privileges purportedly restored by the state.[5]

This harm is avoided in a three-part definition of conviction. The first sentence of § 921(a)(20) states the general rule: "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." This sentence is addressed at *Dickerson*, which had held that federal law supplied the definition of a conviction.[6] Next, the statute elaborates on the general rule by specifying that the federal definition tracks state law even beyond the conviction process, to encompass situations in which the state has restored the convicted felon to his civil rights: "Any conviction which has been expunged or set aside, or for which a person has been pardoned or has had civil rights restored, shall not be considered a conviction for purposes of this chapter. . . ." This necessarily hinges on whether the state's process of expunction, pardon, or restoration of rights[7] results in the restoration *under state law* to the unrestricted right to possess firearms.[8] If under state law the restoration does not include that right, then the person is still under a prior "conviction" by definition. He is prosecutable under state law, so he is also prosecutable under federal law, and the purpose of tracking state law is served. If it does include the right, then the person is immune from state prosecution, and also from federal since he has no prior "conviction" by definition.

■ Finally, § 921(a)(20) places a single limitation on the general rule. It applies when the restoration is done not automatically but by the production of some document, such as a certificate of restoration of civil rights. In that case, the restoration is conclusively presumed to include the unrestricted right to possess firearms, "unless such pardon, expungement, or restoration of civil rights *expressly provides that the person may not ship, transport, possess, or receive firearms.*" (Emphasis added.) Therefore, when the restoration is done by a certificate purporting to restore civil rights, the court should not inquire into whether the right to possess firearms is included.[9] The purpose of this restriction is simply to avoid a trap in which the recipient of the document, believing that "full restoration of all civil rights" means what it seems to mean, is nonetheless pro-

---

rights did not qualify as gubernatorial pardon required to exempt defendant from federal prosecution as convicted felon in possession of firearm); *United States v. Sutton*, 521 F.2d 1385 (7th Cir.1975) (federal prohibition upon receipt, possession, or transportation of firearm by convicted felon is absolute absent express gubernatorial authorization; full and unconditional state pardon not sufficient).

**5.** See *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (state expunction of criminal record did not remove federal disabilities as to firearm dealer license); *Thrall v. Wolfe*, 503 F.2d 313 (7th Cir.1974) *cert. denied* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975) (gubernatorial pardon restoring state firearm privileges did not remove federal disabilities as to firearm dealer license).

**6.** The Court stated:
"Whether one has been 'convicted' within the language of the gun control statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the state. . . . This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'conviction.'"

*Dickerson, supra* n. 4, 460 U.S. at 111, 103 S.Ct. at 989, 74 L.Ed.2d at 853 (citations omitted).
Thus the Court equated a plea of guilty and its notation by the state, followed by a sentence of probation, with being "convicted" within the meaning of the statute.

**7.** The court will use the terms interchangeably.

**8.** This was the issue in *United States v. Erwin*, 902 F.2d 510 (7th Cir.1990). The court there determined that the term "civil rights" in the federal statute *must* include the right to bear arms, thus requiring an initial determination of which rights the state had restored.

**9.** To the extent that *United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990), suggests otherwise at 545 n. 5, this court finds the Sixth Circuit's reasoning not to be controlling in light of the need to resolve the meaning of the statute so as to bear out the *whole* of the legislature's intent. In this respect, the court finds *Erwin, supra* n. 8, to be more persuasive. Nothing in this circuit is to the contrary. See *United States v. Swanson*, 947 F.2d 914 (11th Cir.1991) *and United States v. Kolter*, 849 F.2d 541 (11th Cir.1988).

secutable under federal law when the substantive state law holds that this language does not restore the right to bear arms. Perhaps the state would still prosecute, but Congress considered cases like *Engesser*, *Sutton*, and *Dickerson* and decided to be fair about it.

This court holds that such a construction is necessary to serve the purposes of the statute: (1) To effect the legislature's intent to track state law as to liability to prosecution; and (2), to avoid the potential of misleading one who receives a document purporting to restore his civil rights.

In terms of the hierarchy of these purposes, the legislative history does not indicate which purpose the legislature considered more important. Nonetheless, it is possible to decide which purpose will take precedence without deciding which one is more important in the abstract. This makes sense in the context of the statute's application.

In the purview of this statute, there is only one possible situation for misleading a convicted felon, and that is when he receives a document purporting to restore his civil rights, when in fact state law still restricts his firearm rights.[10] This being the only situation in which one might be misled, it is the only time the legislature's interest in avoiding the trap can be implicated. If even then the purpose of tracking state law did not give way to the purpose of avoiding the trap, the second purpose would never be served. In this one situation, then, Congress is willing to forego the precise tracking of state law to avoid misleading the convict.[11]

This construction of the statute is consistent with its treatment in this Circuit. The principal cases dealing with § 921(a)(20) are *United States v. Kolter*, 849 F.2d 541 (11th Cir.1988) and *United States v. Swanson*, 947 F.2d 914 (11th Cir.1991). In *Kolter* the

defendant had been convicted of burglary under the Georgia Youthful Offender Act. The State Board of Pardons and Paroles restored, without express restriction, "all the civil and political rights Kolter had lost as a result of the burglary offense." *Kolter* at 542. It is important that in *Kolter* the court did not discuss whether the restoration included the right to possess firearms. The deciding factor was simply that "the restoration of civil rights was not qualified by a firearms restriction." *Id.* at 543.

A close reading of *Swanson* reveals that there, too, the Court of Appeals decided the case on the fact that "Swanson's restoration certificate restored, without any express limitation, 'all civil and political rights.'" *Id.* at 916.

From this, it follows that if a conviction for which political and civil rights have been restored is not a conviction for purposes of section 922(g), then Swanson's January 6, 1970 conviction cannot be the basis for indictment under section 922(g) for possession of a firearm. The indictment should be dismissed.

> *This holding is consistent with this court's opinion in United States v. Kolter.*

*Id.* (emphasis added).

Although the court went on to discuss whether the restoration included the right to possess firearms, that need not suggest that this inquiry is necessary in the analysis. That question was not addressed for the purpose of determining whether Swanson was a convicted felon under § 999(g), for the court had already reached its holding simply on the grounds that the document had no express firearms limitations. Rather, the court was merely pointing out that the government was wrong in proposing that under Alabama law, the certificate granting a restoration of rights did not

---

**10.** In either case, absent a statute, one is presumed to know the law. The crucial point is that where the incomplete restoration is accomplished automatically by statute, the presumption extends with equal force to all of the body of the law, but the production of a document gives actual notice of a restoration of civil rights. In that case Congress is simply overrul-

ing the presumption that the person "knows" that the restoration is incomplete.

**11.** Note that the *state* might apply that presumption and prosecute the case anyway, but as to federal law, Congress has required an express restriction *in the document* out of fairness.

restore the right to possess weapons in the first place, so that no express restriction was required. The court explained that in fact such a restoration *was* complete under Alabama law. But it did not rely on this to reach its holding. Indeed it could not properly, logically do so; since the *premise* of the government's argument was exposed as false, the issue was never before the court.

Most significantly, however, the court referred to the government's argument as an attempt "to avoid the express terms of section 921(a)(20)," and relied on those express terms (requiring an express restriction) to dismiss the indictment. *Id.* The implication was that even had Alabama's restoration of civil rights not included the right to possess firearms, the point would have been irrelevant since the "express terms" of the statute require an express restriction. It would have been the one situation in which Congress was willing not to track state law.

C. Application to Hawthorne's Petition.

We now turn to whether the exact language in the last clause of § 921(a)(20) is required in a restoration document in order to subject a convicted felon to prosecution under federal law. Again, the legislative intent is (1) to track state law as to liability to prosecution, so long as (2) the convicted felon who received a restoration document was not misled. Only by holding that the exact language is not required can both ends be met.

In this case, the petitioner received a document that stated that "this person is restored to all civil rights in this state, except the specific authority to possess or own a firearm, . . ." There is nothing ambiguous about this language, and no likelihood that Hawthorne was misled by it. The court will interpret the statute as requiring sufficient notice of a firearms restriction. This permits federal law to track state law, while avoiding the possibility that the person be misled. To require the exact language in this case would prevent federal law from tracking state law without serving the second purpose since there was nothing misleading about the restriction as phrased.

### III. CONCLUSION

The petition for writ of habeas corpus will be denied. An appropriate order will be entered.