17 F.3d 394
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marcus Ruben ELLINGTON, Petitioner-Appellant,
v.
Charles D. MARSHALL, Warden, Respondent-Appellee.
 No. 93-55072.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 7, 1994.*
Decided Feb. 14, 1994.
 
 Before: SCHROEDER, CANBY, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Marcus Ellington, a California state prisoner, appeals pro se the district court's denial of his 28 U.S.C. Sec. 2254 petition for habeas corpus. Ellington claims that his involuntary statements were erroneously admitted at trial, and that the jury should have been instructed that it could not rely on these statements. We have jurisdiction pursuant to 28 U.S.C. Sec. 2253, and review de novo. Thomas v. Lewis, 945 F.2d 1119, 1122 (9th Cir.1991). We affirm.
 
 Involuntary Statements
 
 3
 "Statements volunteered by a suspect in custody are admissible despite the absence of Miranda warnings if they are free from interrogation or other coercion." United States v. Allen, 699 F.2d 453, 459 (9th Cir.1982); see Miranda v. Arizona, 384 U.S. 436, 478 (1966) (statement made voluntarily is admissible in evidence). Custody alone is not sufficient to render a statement coerced; a suspect in custody must be subject to interrogation in order to trigger the protections of Miranda. Rhode Island v. Innis, 446 U.S. 291, 300 (1980). Police questioning constitutes interrogation if, in light of all the circumstances, the questioner should have known that the question was reasonably likely to elicit an incriminating response. United States v. Disla, 805 F.2d 1340, 1347 (9th Cir.1986).
 
 
 4
 Here, Ellington contends that certain statements he made while in custody but prior to receiving his Miranda warnings were involuntary, and so should not have been admitted at trial. Detective Davila testified, both at a hearing outside the presence of the jury and at trial, that immediately after being brought into the interview room, Ellington stated that the victim consented to sex. Davila then explained the charges to Ellington, who stated that he did have sex with the victim, but did not remember any oral copulation or sodomy. Ellington told Davila that he and the victim had left a club to go back to his house and "kick it," which Ellington stated, in response to a question from Davila, meant to have sex. Davila also asked Ellington whether he asked the victim to have breakfast with him; Ellington initially responded in the negative, then agreed that he had asked the victim to have breakfast. After hearing the charges against him in more detail, Ellington stated that the victim had asked to have sex. At this point, Davila gave Ellington his Miranda warnings, Ellington refused to waive his rights, and the interview was terminated.
 
 
 5
 We find that the statements Ellington made regarding the victim's consent to have sex were voluntary, and made without coercion. Accordingly, these statements were properly admitted. See Allen, 699 F.2d at 459; Miranda, 384 U.S. at 478. Ellington's definition of the term "kick it" in response to Davila's question was also voluntary. In light of Ellington's previous statement that he and the victim had sex, Davila should not have known that the request for clarification would be likely to elicit an incriminating response. Accordingly, Davila's question did not constitute interrogation, and Ellington's response was properly admitted. See Innis, 446 U.S. at 300; Disla, 805 F.2d at 1347.
 
 
 6
 Ellington's statements about inviting the victim to breakfast were made in response to Davila's repeated questions. Because Davila should have known that these questions would be likely to elicit an incriminating response, we find that these questions constitute interrogation. See Innis, 446 U.S. at 300; Disla, 805 F.2d at 1347. Because Ellington was in custody and was subjected to interrogation prior to receiving his Miranda warnings, his contradictory statements should not have been admitted at his trial. See Innis, 446 U.S. at 300.
 
 
 7
 However, this does not end our analysis. The erroneous introduction of involuntary statements at trial is subject to harmless error analysis. Arizona v. Fulminante, 111 S.Ct. 1246, 1264-66 (1991). Therefore, Ellington is entitled to habeas relief only if the error had a substantial and injurious effect or influence in determining the verdict. Brecht v. Abrahamson, 113 S.Ct. 1710, 1717 (1993); McKinney v. Rees, 993 F.2d 1378, 1385 (9th Cir.), cert. denied, 114 S.Ct. 622 (1993). Here, we cannot say that the admission of Ellington's contradictory statements regarding inviting the victim to breakfast had a substantial or injurious effect on the verdict. Ellington admitted having sex with the victim; whether or not he invited her to breakfast is immaterial. Accordingly, we find that the erroneous admission of these statements does not warrant relief in habeas corpus. See Brecht, 113 S.Ct. at 1717; McKinney, 993 F.2d at 1385.[1]
 
 Jury Instructions
 
 8
 An allegedly improper jury instruction will merit habeas relief only if "the instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 112 S.Ct. 475, 482 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on appeal." Masoner v. Thurman, 996 F.2d 1003, 1006 (9th Cir.) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)), cert. denied, 114 S.Ct. 643 (1993).
 
 
 9
 Ellington contends that the trial court erred by failing to instruct the jury, sua sponte, to view his statements to Davila with caution.[2] However, Ellington testified at trial that he had sex with the victim and that the victim consented. Furthermore, we have already held that Ellington's statements regarding inviting the victim to breakfast did not affect the verdict. Accordingly, Ellington has not shown that the trial court's failure to give this instruction violated his due process rights. See Estelle, 112 S.Ct. at 482.
 
 
 10
 Ellington also contends that the trial court should have instructed the jury that the corpus delicti must be proved by some evidence independent of his admissions.[3] We find that there was ample evidence of each element of the crime. Furthermore, Ellington only admitted having sex with the victim. Because this was clearly established by the evidence admitted at trial, the jury did not have to rely solely on Ellington's admission to satisfy this element of the crime. Accordingly, the trial court's failure to give this instruction did not violate Ellington's due process rights. See Estelle, 112 S.Ct. at 482; Jeffries, 988 F.2d at 938.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Ellington's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his opening brief to this Court, Ellington raises a number of arguments regarding the reliability of the in camera hearing at which the trial court determined that his statements to Davila were admissible. We do not consider these arguments because they were not raised in the district court. See Willard v. California, 812 F.2d 461, 465 (9th Cir.1987). Furthermore, because neither the district court nor this Court has relied on the state court's findings in determining whether Ellington's statements were voluntary, the adequacy of the state court hearing is immaterial. Cf. 28 U.S.C. Sec. 2254(d); Sumner v. Mata, 455 U.S. 591, 592-93 (1982)
 
 
 [2]
 Ellington contends that the trial court should have instructed the jury using CALJIC 2.70 and 2.71, which define confessions and admissions, advise the jury that it is the exclusive judge as to whether the defendant made a confession or an admission and, if so, whether the statement is true in whole or in part. Each instruction also tells the jury that evidence of an oral confession or admission should be viewed with caution
 
 
 [3]
 Specifically, Ellington contends that the trial court should have given CALJIC 2.72, which reads, in pertinent part: "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession or admission made by him outside of this trial."