33 F.3d 55
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Coleman HALL, Defendant-Appellant.
 No. 93-6345.
 United States Court of Appeals, Sixth Circuit.
 Aug. 3, 1994.
 
 Before: KEITH, BOGGS, and BATCHELDER, Circuit Judges.
 
 
 1
 Defendant-appellant, Coleman Hall, was found guilty by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g). Hall appeals both his conviction and his sentence. For the reasons that follow, we reject appellant's assignments of error and affirm his conviction and sentence.
 
 I.
 
 2
 On October 3, 1993, Kentucky State Police trooper Mel Leonhart was on patrol in Greenup County, Kentucky, when he received a radio dispatch directing him to proceed to the scene of a domestic dispute. The trooper was specifically told to be on the lookout for appellant. After first going to the wrong location, trooper Leonhart was told to go to the appellant's residence. Upon arriving at the residence, trooper Leonhart saw appellant come from behind a house trailer with a shotgun over his shoulder.
 
 
 3
 At this point the trooper's and appellant's versions of the facts differ markedly. Appellant claims that upon being ordered by the trooper to put down the shotgun, he immediately complied and put his hands in the air. Trooper Leonhart's version of the events, however, is far more eventful. Trooper Leonhart testified that when he saw appellant with the shotgun, he drew his service revolver and, taking cover behind the door of his cruiser, identified himself as a Kentucky State Police officer and ordered appellant to lay down his shotgun. Appellant responded by cursing at the trooper and refusing to put down the weapon.
 
 
 4
 In the ensuing standoff, the trooper told appellant that he was under arrest and repeatedly ordered him to put down the shotgun; appellant refused to do so and continued to curse the trooper. Feeling that he was at a disadvantage because he was armed only with his revolver, trooper Leonhart retrieved his own shotgun from the cruiser. Although the appellant never actually pointed the shotgun at the trooper during this encounter, he did bring it up and hold it at the port-arms position. He also, while still holding the shotgun, motioned for the trooper to come out from behind the cruiser door and "meet [him] halfway," an invitation trooper Leonhart declined. Appellant eventually laid down the weapon and was taken into custody by the trooper.
 
 
 5
 After back-up arrived, trooper Leonhart checked appellant's shotgun and found that it was loaded with a round in the chamber and the safety set to fire. The appellant was extremely intoxicated and belligerent, and he continued to curse at the troopers. When it was determined that appellant was a convicted felon, the case was submitted to the federal authorities for prosecution.
 
 
 6
 The appellant pled not guilty to the single-count indictment for being a felon in possession of a firearm. 18 U.S.C. Sec. 922(g). At trial, the United States made an oral motion in limine at the conclusion of voir dire, based on information gleaned from defense counsel's questioning of the jurors, to preclude the defense from introducing evidence or argument concerning advice allegedly given to appellant by a state probation officer to the effect that it was lawful for him to possess a shotgun. The court eventually sustained the motion, holding that the defense of "entrapment by estoppel" was not available to the appellant in a federal firearms prosecution unless the advice relied upon was given by an official of the federal government. On July 1, 1993, the jury returned a verdict of guilty on the single count.
 
 II.
 
 7
 Appellant appeals both his conviction and his sentence. He argues first that his conviction must be reversed because the defense of entrapment by estoppel is available to him despite the fact that the advice he allegedly relied on was given by a state, rather than a federal, official. Second, appellant argues that the district court erred in calculating his sentence pursuant to U.S.S.G. Sec. 3A1.2(b) and U.S.S.G. Sec. 2K2.1(b)(2).
 
 A.
 
 8
 During his voir dire of the jury, appellant's counsel inquired into the jurors' ability to accept the idea that a person could be misled by someone in authority to believe he could lawfully possess a shotgun. The government then made an oral motion to exclude any evidence concerning statements allegedly made to appellant concerning the legality of his possessing a gun. The district court requested that appellant's counsel make an avowal identifying the witnesses who could testify to such a representation and the substance of their testimony. Counsel responded that appellant would testify that his state probation officer[1] had told him that he could never possess a handgun, but that he could legally possess a shotgun or deer rifle. Appellant points to Ky.Rev.Stat.Ann. Sec. 527.040 (Baldwin 1992), which prohibits felons in Kentucky from possessing handguns, but does not expressly mention other types of firearms.[2] Finally, appellant's counsel indicated to the district court that testimony would be introduced showing that appellant had taken the shotgun to turkey shoots at which state police officers were present.
 
 
 9
 The United States Supreme Court and numerous circuit courts have recognized the defense of entrapment by estoppel. See, e.g., Cox v. Louisiana, 379 U.S. 559 (1965); Raley v. Ohio, 360 U.S. 423 (1959); United States v. Bazargan, 992 F.2d 844 (8th Cir.1993); United States v. Smith, 940 F.2d 710 (1st Cir.1991); United States v. Etheridge, 932 F.2d 318 (4th Cir.), cert. denied, 112 S.Ct. 323 (1991); United States v. Brebner, 951 F.2d 1017 (9th Cir.1991); United States v. Bruscantini, 761 F.2d 640 (11th Cir.), cert. denied, 474 U.S. 904 (1985). This defense applies "when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official." Brebner, 951 F.2d at 1024. Despite the use of the word estoppel, the defense is not based on principles of equity or contract. Rather, the doctrine of entrapment by estoppel "is based upon fundamental notions of fairness embodied in the Due Process Clause of the Constitution." United States v. Levin, 973 F.2d 463, 468 (6th Cir.1992). This Circuit has set out four factors to be used in determining the availability of the defense: "(1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was reasonable; and, (4) given the defendant's reliance, the prosecution would be unfair." Levin, 973 F.2d at 468.
 
 
 10
 We find it unnecessary here to apply the factors enumerated in Levin, because we conclude that appellant's state parole officer was not an "authorized government official" for purposes of raising this defense in a federal firearms prosecution. It is appellant's position that the doctrine of entrapment by estoppel should be available to a defendant prosecuted in federal court for actions taken in reliance upon representations made to him by state officials. And, although the appellant is less than clear in this regard, he appears to claim that the state official's representation, on which appellant relied, was made with regard to Kentucky law only, citing Kentucky's felon-in-possession statute.
 
 
 11
 Appellant's position, with one very limited exception, has been uniformly rejected by every court to consider it. In Brebner, supra, the Ninth Circuit rejected the defendant's attempts to claim entrapment by estoppel on the basis of representations made by state officials, holding: "[W]e conclude that Brebner was not entitled to rely on any representations made by state or local officials because, unlike situations where estoppel has been upheld, these officials lacked the authority to bind the federal government to an erroneous interpretation of federal law." Brebner, 951 F.2d at 1026. In Bruscantini, supra, the Fourth Circuit noted that in order for a defendant to assert successfully the defense of entrapment by estoppel it is crucial that the government that gave the advice and the government that prosecutes the crime be the same. Bruscantini, 761 F.2d at 641-42. See also, Etheridge, 932 F.2d at 320-21 (holding that affirmative advice of a state judge does not prevent prosecution on a federal firearms charge). In United States v. Allen, 699 F.2d 453 (9th Cir.1982), superseded by statute on other grounds, the Ninth Circuit faced a situation identical to the one before us now. In Allen, the defendant was convicted in a federal court of a charge of possession of a firearm by a felon. The defendant asserted "that he was entrapped because he was told by his parole officer that he could possess firearms...." Id. at 458 n. 1. The court rejected this position, holding: "Allen was indicted for violating the federal gun laws. He has not claimed that any federal officials acted to induce the commission of the offense for which he was indicted. The actions of his North Carolina parole officer are irrelevant to an entrapment defense." Id. Finally, this court, in United States v. Hurst, 951 F.2d 1490 (6th Cir.1991), cert. denied, 112 S.Ct. 1952 (1992), held that where there was no evidence that the defendants were ever told by state officials that their conduct was legal, and where the statements allegedly relied on by the defendants were made by state officials relating to state law while defendants were charged with violations of federal law, the defense was not available.[3]
 
 
 12
 The only case appellant can cite which arguably reaches a contrary conclusion is United States v. Brady, 710 F.Supp. 290 (Colo.1989), in which the district court held that because an affirmative statement was made by the state court criminal judge to Brady, "it would violate due process to convict Brady of this offense in light of the fact that the defendant's conduct conformed to the judge's statement of law." Id. at 295. However, the Brady court made it clear that its holding was narrow: "The state judge had more than mere authority to interpret and apply federal law, he had a constitutional duty to do so. Further, state judges have a role in regard to this particular statute because state convictions trigger the applicability of the law." Nonetheless, at least one court has specifically rejected this rationale, see Etheridge, 932 F.2d at 320-21, and another has independently reached a contrary conclusion. See Bruscantini, 761 F.2d at 641-42.
 
 
 13
 After a thorough review of the relevant case law, we conclude that on the facts in this case, appellant was not entitled to an instruction to the jury on the defense of entrapment by estoppel. Appellant concedes that he did not rely on any representations made by a federal official, and in this federal prosecution neither Ky.Rev.Stat.Ann. Sec. 527.040 nor the fact that appellant took his firearm to turkey shoots where state police officers were present is relevant to appellant's claim of entrapment by estoppel. We therefore hold that the district judge correctly granted the government's motion in limine with respect to this evidence.
 
 B.
 
 14
 At sentencing, the district court added three levels to appellant's offense level pursuant to U.S.S.G. Sec. 3A1.2(b). This section provides for the increase where "during the course of the offense or immediate flight therefrom, the defendant ... knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury." U.S.S.G. Sec. 3A1.2(b). When reviewing a sentence imposed under the guidelines this Court "shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. Sec. 3742(e).
 
 
 15
 The district court specifically found that "there was an assault upon the trooper with that shotgun, and I think that the record would show that the trooper had good reason to believe he was being assaulted.... It is not necessary to inflict mortal injury...." Relying on application note 5 to Sec. 3A1.2(b), appellant argues that this enhancement only applies to conduct which creates a "substantial risk of serious bodily injury." Appellant maintains that because he merely held his shotgun at the port arms position and at no time actually aimed it at the officer, he could not be found to have created the substantial risk of serious injury contemplated by the enhancement provision.
 
 
 16
 This circuit has addressed U.S.S.G. Sec. 3A1.2(b) in only one published opinion; the circumstances there are inapplicable to the present case. See United States v. Mills, 1 F.3d 414 (6th Cir.1993) (reversing application of the enhancement because district court did not determine whether defendant was aware that victim was an officer). However, the Ninth Circuit, in United States v. Powell, 6 F.3d 611 (9th Cir.1993), analyzed Sec. 3A1.2(b) under circumstances very similar to those in this case. In Powell, two Washington State Patrol officers were investigating a lead on a stolen vehicle. After pulling into a driveway behind a suspect vehicle, the officers identified themselves and asked one of the individuals in the car to step out. As that person, Powell, got out of the car, one of the officers noticed that he had a gun in his right hand. The officer attacked Powell in an effort to separate him from the handgun. The district court concluded that Powell had "assaulted" the officer and increased his base offense level pursuant to Sec. 3A1.2(b). The Ninth Circuit affirmed the application of Sec. 3A1.2(b) to Powell.[4]
 
 
 17
 We find the circumstances of the assault in this case more compelling than those in Powell. Here, the testimony presented at trial showed that appellant was drunk and belligerent, that the officer repeatedly ordered him to drop the weapon and that, before finally complying with that order, appellant held the weapon at port arms for some period of time. As the district court found: "[Appellant] was carrying the shotgun at port arms, which is one move away from taking aim and firing and walking toward the trooper who was in a position where he would have been in the line of fire had the defendant elected to fire...." The officer felt threatened enough by these actions that he retrieved his own shotgun from the cruiser and remained crouched behind its door until appellant finally laid down the gun. These overt acts by the appellant are more than sufficient to create a "substantial risk of serious bodily injury." Therefore, we affirm the district court's determination that the Sec. 3A1.2(b) enhancement for assault was warranted.
 
 
 18
 Finally, appellant claims that his possession of the shotgun was "solely for lawful sporting purposes" as contemplated by Sec. 2K2.1(b)(2) of the guidelines.[5] Appellant has the burden of proving, by a preponderance of the evidence, that possession of the weapon is for lawful sporting purposes only. United States v. Morrison, 983 F.2d 730, 732 (6th Cir.1993). Appellant argues that he lawfully used the shotgun at turkey shoots, and is thus eligible for the reduction found in Sec. 2K2.1(b)(2). This contention is absurd. Whatever lawful sporting uses appellant may have had for this shotgun, brandishing it at a Kentucky State Trooper was not one of them. The district court correctly denied appellant the benefit of Sec. 2K1.1(b)(2).
 
 III.
 
 19
 Appellant's conviction and sentence are AFFIRMED.
 
 
 
 [1]
 Though there is no specific evidence of appellant's prior convictions in the record, appellant's trial counsel stated that,
 Mr. Hall was convicted back in 1973 not only in state charge [sic] but also a federal charge of an unregistered firearm. That sentence was to run consecutive with the state charge. He was on--he was never on parole from any federal charge, was never required to report to any federal probation officer. The only probation officer he was ever required to report to was the Commonwealth of Kentucky probation officer back in the mid '70s.
 
 
 [2]
 Ky.Rev.Stat.Ann. Sec. 527.040(1) (Baldwin 1992) provides in relevant part:
 A person is guilty of possession of a handgun by a convicted felon when he possesses, manufactures, or transports a handgun when he has been convicted of a felony, as defined by the laws of the jurisdiction in which he was convicted, in any state or federal court....
 
 
 [3]
 It should be noted, however, that in Hurst, the defendants were charged with violation of 18 U.S.C. Sec. 1955, and we pointed out that
 "[o]ne of the purposes of section 1955 was to aid in the enforcement of state gambling laws where state enforcement was disabled by corruption of state officials. [Citation omitted] Allowing a state official's alleged complicity in illegal activities to void the convictions here would violate the intent of Congress in enacting section 1955 and distort the clear due process doctrine set forth in Cox and Raley."
 Hurst, 951 F.2d at 1499-1500.
 
 
 [4]
 The court in Powell devotes most of its discussion to the question of whether application note 1 to Sec. 3A1.2(b) precludes enhancement in a situation where the crime is "victimless." Appellant has not raised this issue and we do not address it
 5 U.S.S.G. Sec. 2K2.1(b)(2) provides that, "[i]f the defendant ... possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6."