UNITED STATES of America, Plaintiff–Appellee,

v.

Douglas John HUNTER, Defendant–Appellant.

No. 99–2221.

United States Court of Appeals, Sixth Circuit.

Feb. 9, 2001.

Before BOGGS and GILMAN, Circuit Judges; and BECKWITH, District Judge*.

PER CURIAM.

Douglas Hunter entered a conditional plea of guilty to charges of violating 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), possession of firearms and ammunition by a felon. Hunter preserved his right to appeal certain pretrial rulings of the trial court. Hunter argues that the court erred in not suppressing evidence purportedly taken in violation of Fed. R.Crim.P. 41 and the Fourth Amendment. Hunter also believes that he was improperly denied the opportunity to present evidence of a good faith belief in his right to possess firearms. Finally, he argues that the indictment against him should have been dismissed because the government was subject to estoppel by entrapment, and because the charges against him were the result of a selective and/or vindictive prosecution. We affirm the pretrial rulings of the lower court and Hunter's conviction.

* The Honorable Sandra S. Beckwith, United States District Judge for Southern District of Ohio, sitting by designation.

## I

Hunter belongs to the Chippewa people, and is a resident member of the Bay Mills Indian Community in the Upper Peninsula of Michigan. On June 27, 1997, Tribal Officer Ronald Carrick was called to Hunter's residence to assist Marcha Edwards in obtaining some of her belongings. Officer Carrick asked to speak to Hunter, but Hunter, carrying a shotgun, began yelling and approached Carrick in an aggressive manner. Officer Carrick departed swiftly with Ms. Edwards, but considered whether he should arrest Hunter for assault, which is a violation of tribal law, as codified in the Bay Mills Tribal Code § 607. Officer Carrick prepared a citation dated that day for assault on a police officer. Later that evening, Hunter's family called the Bay Mills Police and told them Hunter was at their residence, intoxicated and waving around a loaded shotgun. Hunter was arrayed in traditional Chippewa garb and making threats to fight the tribal police and the FBI, who he claimed were out to get him. The family was concerned because Hunter only rarely wore traditional clothes but had expressed a wish to die with them on; they seem to have suspected that a despondent Hunter might be contemplating a violent and perhaps fatal confrontation with the authorities.

The next day, June 28, Officer Carrick performed a computerized criminal history check on Hunter. He found that Hunter had been convicted for felony assault in Arizona in 1985. Hunter had been paroled in 1987. On June 29, Officer Carrick sought arrest and search warrants from Appellate Judge Donald Parrish of the Bay Mills Tribal Court, based on an affidavit reporting essentially the above facts; the affidavit also noted that federal law prohibits felons possessing firearms. An arrest warrant for assault and a search warrant were issued. Officer Carrick also contacted Levi Carrick, a federal agent employed by the Bureau of Indian Affairs (BIA) in Sault St. Marie, and told him of the possible federal link. Agent Carrick then called Officer Carrick the next day, June 30, after he learned federal prosecutors were possibly interested in prosecuting Hunter.

On June 30, the Bay Mills Police Department (BMPD) learned that Hunter was away from his house, and saw an opportune time to execute the search warrant in order to collect his guns. Because of the interest of the United States Attorney, Agent Carrick accompanied four Bay Mills officers in executing the tribal search warrant, which netted three long guns and a stock of ammunition. That same day, the BMPD arrested Hunter for assault. However, the tribal charges were dismissed on July 18, 1997. More than a year later, in October 1998, the ATF arrested Hunter for his earlier gun possession; in searching his residence in 1998 they also found another shotgun.

Hunter initially sought to suppress the three guns collected on June 30, 1997 by asserting a violation of the provisions of Fed.R.Crim.P. 41(a) that authorize the issuance of search warrants by a "federal magistrate judge, or a state court of record." Because Judge Parrish was neither, Hunter reasoned, his warrant and the search based on it were invalid. In response to Hunter's motion to suppress, a magistrate judge's report and recommendation ("R&R") was issued in January 1999; the magistrate judge found that Fed.R.Crim.P. 41(a) did not apply, because the warrant was issued pursuant to a violation of tribal law, and Judge Parrish had the authority to issue warrants with regard to such infractions. See Bay Mills Tribal Code §§ 506(B)(search warrants), 503(A) (arrest warrants). Hunter did not object to this finding of the January 1999

R&R, and it was adopted by the district court in February 1999.

Hunter then filed another series of motions, in which he argued that the warrant was obtained in violation of the Fourth Amendment because Judge Parrish was not a "neutral and detached magistrate."[1] Hunter also moved to quash the indictment on the grounds of estoppel by entrapment. Hunter claimed that the issuance of hunting permits to him by Bay Mills led him to believe reasonably that his right to bear firearms had been restored by operation of Michigan law. Hunter's claims of judicial bias and estoppel by entrapment were rejected by the R&R of the magistrate judge in June 1999 and adopted by the court (over Hunter's objections) in July 1999; the court also ruled that Hunter would not be allowed to present evidence on entrapment to the jury.

As the case moved toward trial, Hunter indicated that he would mount a defense based on two further theories. First, Hunter attempted to dismiss the indictment on the grounds of selective or vindictive prosecution, which he supported by pointing to the case of a non-Native former felon, one Darrell McDonald, who was being prosecuted by the State of Michigan for trafficking in stolen guns, but against whom federal charges for being a felon-in-possession had not been brought. Second, Hunter sought to introduce evidence of his state of mind as the grounding for a "mistake of law" or "good faith" defense, based on his claimed belief that Michigan law governed the restoration of civil rights and that he thought it had restored his right to possess firearms. The district court refused to dismiss the indictment on vindictive prosecution grounds and, following a government motion *in limine*, excluded

Hunter's evidence on these two grounds as irrelevant. Hunter shortly thereafter filed a conditional plea agreement and was sentenced to 46 months in prison.

Hunter now appeals the evidentiary rulings of the district court. Hunter reasserts his claim that Fed.R.Crim.P. 41(a) has been violated, this time arguing that the warrant was issued without probable cause, because he did not actually assault Officer Carrick. Hunter also appeals the district court's denial of his motion to suppress on the grounds that Judge Parrish was biased, and the court's exclusion of his evidence of his good faith belief that he had the right to bear firearms and his evidence of selective prosecution. In addition, Hunter appeals the refusal of the court to dismiss the indictment based on grounds of selective prosecution and/or estoppel by entrapment.

II

*Standard of Review*

■ If a defendant fails to file objections to a magistrate's report and recommendation, appeals as to that issue are waived. *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981). For those suppression claims not waived, the factual findings of a district court are examined for clear error and its conclusions of law are reviewed de novo. *United States v. Bennett,* 170 F.3d 632, 635 (6th Cir.1999). The evidence is reviewed in the light most favorable to the conclusions of the district court. *Ibid.* We review a district court's decision to exclude evidence pursuant to a motion *in limine* for an abuse of discretion. *See United States v. Phibbs,* 999 F.2d 1053, 1078 (6th Cir.1993).

1. Hunter also attempted to reassert a Fed. R.Crim.P. 41 claim, asserting that the rule did apply because of Levi Carrick's involvement in the case, and that it had been violated, although he did not specify in precisely what way.

The district court's refusal to dismiss an indictment is also normally reviewed under an abuse of discretion standard. *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir.1990). A district court's findings on a claim of prosecutorial vindictiveness are reviewed for clear error. *United States v. Sammons*, 918 F.2d 592, 600 (6th Cir. 1990).

■ On Hunter's claims of estoppel by entrapment, our standard of review is less certain, as Hunter appears to be appealing both the court's refusal to dismiss the indictment on this ground and the court's ruling that "the entrapment by estoppel defense is not an available defense" even when accepting all of Hunter's assertions as true. We have held that the question of entrapment is factual and normally for a jury to decide, unless, as the district court found here, the evidence is not in dispute. *See United States v. Clark*, 957 F.2d 248, 250 (6th Cir.1992). The Seventh Circuit has concluded that a pre-trial refusal of a district court to allow an entrapment defense is subject to de novo review, since it is a determination that the defense is unavailable as a matter of a law. *United States v. Santiago–Godinez*, 12 F.3d 722, 726 (7th Cir.1993).

■ In a somewhat similar felon-in-possession case, *United States v. Hall*, No. 93–6345, 1994 WL 408188 (6th Cir. Aug. 3, 1994) (unpublished), we appear to have essentially conducted a de novo review of the district court's exclusion of evidence on an entrapment defense. In *Hall*, the legal issue was whether the defendant could have been entrapped by a state official for a federal charge; here, Hunter claims to have been entrapped by his tribe. Conducting a "thorough review of the relevant case law," we concluded that Hall could not, with regard to a federal charge, have been entrapped by a state official, and therefore that the defense was properly held unavailable by the district court. *Id.* at *4; *see also United States v. Sissom*, No. 88–5274, 1988 WL 116751 (6th Cir. Nov. 3, 1988) (unpublished) ("Upon a careful review of the evidence introduced at trial and defendant's and defense counsel's statements to the court relative to the entrapment defense, we conclude [defendant] was not entitled to rely on an entrapment defense."). Given this persuasive authority, which the government interprets as indicating a de novo standard, and the purely legal issue involved, we will presume our review to be de novo with regard to the limited issue of whether a jury question was created by Hunter's entrapment claims. With regard to the district court's rejection of the Hunter's attempts to dismiss the indictment entirely on entrapment grounds, our review remains for abuse of discretion.

### Suppression of Evidence Based on Fed.R.Crim.P. 41

Hunter raised a claim under Fed. R.Crim.P. 41 before the magistrate judge, and it was denied in the magistrate judge's report and recommendation on the basis that federal rules are not implicated by a tribal investigation. Although Hunter now points to a different violation of Rule 41 than he did initially, he has failed to preserve a challenge to the threshold question of the Rule's applicability. In order to preserve an issue for appeal, a defendant is required to file objections with the district court to the findings of the magistrate judge. *See Walters*, 638 F.2d at 949 (6th Cir.1981); *see also Thomas v. Arn*, 474 U.S. 140, 145–46, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (explicitly upholding Sixth Circuit practice following *Walters*). Hunter did not file an objection to the magistrate's denial of his Rule 41 claim.

■ Even if his claim had not been waived, it would be futile, as the law was

correctly applied to facts not clearly in error. Fed.R.Crim.P. 41 constrains federal officers and federal investigations. *See United States v. Searp*, 586 F.2d 1117, 1121 (6th Cir.1978). Mere federal involvement is not enough; there must be significant involvement prior to the search. *See United States v. MacConnell*, 868 F.2d 281, 284 (8th Cir.1989) (holding that an FBI agent's pre-search warrant contact with a tribal criminal investigator, who informed him of a possible federal link, did not invalidate a tribal judge's warrants based on tribal offenses by making applicable Fed.R.Crim.P. 41(a)). The district court did not commit clear error in finding that Agent Levi Carrick did not have significant enough involvement in the initial phases of the investigation to transform it into a federal investigation.

### Suppression of Evidence Based on the Fourth Amendment

 Hunter's claims of Judge Parrish's bias are based on the Fourth Amendment. The individual rights provisions of the Bill of Rights are not automatically applied to the conduct of Indian tribes, except and to the extent that they have been made applicable to tribes by Congress through the Indian Civil Rights Act. *See United States v. Doherty*, 126 F.3d 769, 778 (6th Cir.1997). However, the Indian Civil Rights Act, 25 U.S.C. § 1302(2), establishes parallel protections against "unreasonable search and seizures" and a parallel requirement of probable cause for warrants. Therefore, although caselaw interpreting the Fourth Amendment is not automatically available to Hunter when seeking to invalidate the warrant of a tribal judicial officer, our rule in *Doherty* holds

that we are guided by parallel construction in determining Congressional intent, consistent with a Congressional desire not to interfere unduly with tribal tradition. *See* 126 F.3d at 779. The principle of judicial impartiality is a core tenet of judicial systems—*cf. Tumey v. Ohio*, 273 U.S. 510, 524, 47 S.Ct. 437, 71 L.Ed. 749 (1927)—and indeed is codified by the Bay Mills Community in § 506(c) of its tribal code.

 We have identified two main ways in which a magistrate can deviate from his judicial role: when he has a substantial personal interest in the outcome or is acting primarily in a law-enforcement capacity. *See United States v. Bowers*, 828 F.2d 1169, 1174 (6th Cir.1987). Hunter does not show that Judge Parrish had abandoned his judicial role in either of these ways. As in *Bowers*, where the defendant accused Judge Feikens of harboring "personal animosity," Hunter claims Judge Parrish belongs to a family with long standing animosity towards him. *Cf. id.* at 1176 (rejecting such a claim as unsubstantiated). Hunter offered evidence that he had been investigated for stabbing Judge Parrish's sister's dog in 1990, and that Hunter had filed a complaint against Judge Parrish's brother (a tribal police officer) for harassing him in 1995. He reports no previous incidents or indication of animosity on the part of Judge Parrish himself, thus making his claims even more tenuous in some respects than those rejected in *Bowers*.[2]

 Actual as opposed to inferential evidence of bias is lacking here. The best such evidence would be that in fact the warrant had issued without probable

---

2. Particularly considering the unique judicial characteristics of relatively small tribal communities made up of extended families, accepting defendant's mere inference of bias based on historical conflicts with the magis-trate's kin would place an onerous and sometimes impossible burden on tribal courts; this would be wholly inconsistent with Congressional intent in its extension of civil rights protection.

cause, supported by "oath or affirmation" as specifically required by 25 U.S.C. § 1302(2). However, probable cause was present, based on the eyewitness affidavit of Officer Carrick. Officer Carrick claimed he had been assaulted (threatened with harm) by Hunter when Hunter approached him aggressively with a shotgun. The searched-for shotgun was evidence of the alleged crime for which a search warrant was appropriate. Defendant cannot show how any purported bias affected Judge Parrish's judicial role, since he did what a neutral magistrate would have done. *See United States v. Heffington*, 952 F.2d 275 (9th Cir.1991) (stating that the crux of the bias inquiry is whether the magistrate's probable cause determination was affected).

### *Estoppel by Entrapment*

■ Hunter claims that he was misled into believing he could possess firearms by tribal officials because they issued him hunting licenses, despite supposedly having some knowledge of his Arizona conviction. However, these permits do not require him to declare whether or not he had been convicted of a felony, nor do they even mention firearms. Apparently, the tribe gives out hunting permits to all its members who seek to participate in the tribe's residual treaty rights over its ceded territory. Hunter was never affirmatively misled by any official, much less a federal official, as to his right to bear arms. *See United States v. Hurst*, 951 F.2d 1490, 1499 (6th Cir.1991); *see also Hall*, 1994 WL 408188 at *3 (unpublished). Therefore, we agree with the district court that, as a matter of law, Hunter has failed to establish the factual basis for an estoppel

by entrapment defense. *A fortiori*, it was not an abuse of discretion for the court to refuse to dismiss the indictment on this ground.

### *Mistake of Law and Selective Prosecution*

■ Hunter's further claims can be dealt with briefly, as Chief Judge Edgar's Memorandum and Order of August 9, 1999, adequately addresses the legal and factual basis for rejecting them. The law of Arizona, the state of Hunter's conviction, actually governed the restoration of Hunter's civil rights. *See Caron v. United States*, 524 U.S. 308, 313, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998). Notably, Hunter took none of the steps necessary to have even Michigan, much less Arizona, restore his right to bear arms, a fact that undermines his claims of a good faith belief that Michigan law allowed him to possess his guns.[3] Moreover, we agree with the district court that a good faith belief or mistake of law defense was unavailable as a matter of law to Hunter, and evidence pertaining to it was properly excluded. *See United States v. Lomax*, 87 F.3d 959, 962 (8th Cir.1996) (holding that a mistaken belief that civil rights have been restored provides no defense to the felon-in-possession charge, and is properly precluded as a defense).

■ Nor did Hunter establish a claim of vindictive or selective prosecution by the government. The single other defendant as to whom Hunter attempted to present evidence of more favorable treatment by the United States Attorney, purportedly because of his non-Native status, was not

---

**3.** As discussed by the district court, even had Michigan law applied, Hunter's right bear arms would not have been restored by automatic operation of law. Hunter's citation in support of his good faith belief to *Hampton v.*

*United States*, 191 F.3d 695, 702 (6th Cir. 1999), which interpreted Michigan law as automatically restoring civil rights to felons under other circumstances, is inapposite.

shown to have even been referred to federal prosecutors. Hunter's other claims on this point appear to have been based on his theory that his *tribe* vindictively or selectively referred him for federal prosecution. However, even had Hunter come forward with evidence to support this theory (as he has not), it would do nothing to support his claims of improper motive on the part of the United States. The district court's exclusion of this defense and refusal to dismiss the indictment on Hunter's claims of vindictive or selective prosecution are also valid.

## III

The pretrial rulings of the lower court and Hunter's conviction are AFFIRMED.