**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0930n.06
Filed: December 22, 2006

**No. 05-6256**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| RONNIE LEBRON SLATER, | ) | District of Tennessee |
| | ) | |
| Defendant-Appellant. | ) | |

**Before:** **BOGGS, Chief Judge; DAUGHTREY, Circuit Judge; MILLS, District Judge.**[*]

**PER CURIAM**. Ronnie Lebron Slater was arrested on December 13, 2002. He was

indicted on three counts of violating 21 U.S.C. § 841(a)(1). The charges were: (1) possession with

intent to distribute in excess of five grams of cocaine base, 21 U.S.C. § 841(b)(1)(B); (2) possession

with intent to distribute in excess of 500 grams of cocaine powder, 21 U.S.C. § 841(b)(1)(B); (3)

possession with intent to distribute marijuana, 21 U.S.C. § 841(b)(1)(D). On March 22, 2005, Slater

was convicted by a jury on all three counts and sentenced to 130 months. Slater appeals his

conviction on two grounds. First, he contends that the district court improperly admitted evidence

obtained from a search of his residence because the search warrant was obtained in violation of Rule

---

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

41 of the Federal Rules of Criminal Procedure. Second, Slater claims the district court improperly admitted evidence obtained from a stop and search of his car because the police lacked probable cause for the stop and search and performed them without a warrant. Slater also appeals his sentence on the ground that the district court wrongly found that his reckless driving during his stop created a substantial risk of severe harm and therefore wrongly applied a two-level sentencing enhancement under USSG § 3C1.2. Because we find that the district court did not commit plain error in upholding the search of Slater's residence, correctly upheld the stop and search of Slater's automobile, and did not clearly err in the fact-finding supporting the two-level sentencing enhancement, we affirm Slater's conviction and sentence.

**I**

The relevant facts of this case are generally not in dispute. Detective Todd Floyd of the Chattanooga Police Department began to investigate Slater after receiving information from a confidential informant that Slater had been selling cocaine. Floyd had known the informant for one week prior to receiving the tip. The informant agreed to cooperate with the police and perform a controlled buy of drugs from Slater. Prior to the buy, the police searched the informant and his vehicle to ensure that neither cash nor controlled substances were present. The police then continuously watched the informant and Slater as they met at a prearranged location, then as Slater drove to 2134 East 27th St., entered, emerged, and returned to the prearranged location. At that point, Slater gave the informant cocaine.

In addition to this controlled buy, other detectives conducted surveillance on the East 27th St. address and observed that the vehicle Slater drove during the controlled buy, an early 1990's

Cadillac with Tennessee tag number BFN007, had been present at the address on several occasions. Slater had also been stopped for a traffic violation while driving the Cadillac on another occasion. Another informant stated that Slater drove the vehicle while selling and delivering cocaine, and that Slater sold cocaine from the East 27th St. address. The second informant had provided the police with information on at least six occasions in the past that had led to the arrest of individuals for violating narcotic laws. Another officer also received information from another informant that drug sales had taken place at the address.

At some point in the investigation, the local police contacted the Bureau of Alcohol, Tobacco, and Firearms ("ATF") regarding the investigation. ATF Agent Cordell Malone testified that he became involved in the investigation of Slater a week before Slater's arrest. He also testified that he was not the case agent, did not take notes, handle the controlled buy, or otherwise direct the operation.

Based on the above investigation, the police applied for a warrant to search the East 27th St. address. The affidavit in support of the search warrant application included all of the details of the investigation, as recited above. The application was made to a Hamilton County, Tennessee, General Sessions Court judge. The judge issued the search warrant on December 11, 2002, authorizing Floyd or another officer to search the East 27th St. address.

The same confidential informant who had originally contacted Floyd also informed Floyd that Slater had mentioned in a telephone conversation with the informant that Slater would be driving to Atlanta, Georgia on December 11, 2002 and returning on the same day with narcotics. Based on this information, the police (including ATF Agent Cordell Malone and Detective Floyd)

created a plan to stop Slater upon his return from Georgia, and then execute the search warrant at the East 27th St. address. The police did not obtain a warrant to stop or search Slater's car.

On December 11, officers tracked Slater as he drove north on I-75 from Georgia into Tennessee. Once he was in Tennessee, several officers executed a slowdown of traffic behind Slater to keep civilian traffic out of the vicinity of the stop, and an officer then pulled an unmarked dump truck into the fast lane in front of Slater while another detective driving an unmarked SUV pulled up next to Slater in the right lane. The dump truck was traveling approximately 45 to 50 mph. At that point, two marked police cars drove up behind Slater and activated their lights. Blocked to the rear, front, and right, Slater did not respond to the police lights, but rather veered into the emergency lane and accelerated. The dump truck pulled into the emergency lane in front of Slater. Simultaneously, the SUV moved into the left lane. At some point, the Cadillac and the SUV collided and the bumpers of the two vehicles locked. The officer driving the SUV pushed the Cadillac into the concrete divider and Slater stopped. The entire episode occurred within less than 2 miles. According to one officer's testimony, after Slater was stopped, he tried to back up, but hit a marked police car that had pulled in behind the Cadillac. Slater contends that this never happened and notes that even if it did, the impact was not sufficient to cause the police car's airbag to deploy. According to one officer, no significant damage was done to the Cadillac as a result of the stop.

Slater was then taken into custody. The detectives had brought a canine unit with them to the stop and the dog alerted on the trunk of the Cadillac. A search of the trunk revealed a dog food bag with approximately three pounds of marijuana inside.

Upon being notified of Slater's arrest, Detective Floyd executed the search warrant on the

East 27th St. address. When officers entered the house, Slater's mother and daughter were present, both of whom resided at the address. The officers were directed to Slater's bedroom where they found a small safe containing cocaine powder and crack cocaine.

After his initial appearance, Slater filed several motions to suppress, addressing any and all evidence obtained as a result of the searches of the East 27th St. address and the Cadillac. A magistrate judge conducted a suppression hearing, recommended that the motions be denied, and the district court accepted the recommendation. The case went to trial on March 21, 2005, and Slater was convicted on all three counts.

Following Slater's conviction, the district court conducted a sentencing hearing on July 20, 2005. The one relevant issue upon appeal is whether the district court should have followed the probation officer's recommendation to increase the sentencing guideline level by two levels pursuant to USSG § 3C1.2: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." In ruling that the enhancement should apply, the district court denied Slater's request to have a traffic accident expert testify at his sentencing hearing. The court did allow Slater to submit a report from the expert and allowed Slater's attorney to argue, using that report, that Slater's actions did not create a substantial risk of serious bodily injury. Based on that enhancement, the court imposed a sentence of 130 months, which was within the guideline range of 121-151 months. Had the court not applied the enhancement, the guideline range would have been 97-121 months. The statutory minimum penalty was 120 months.

**II**

In reviewing a district court's denial of a motion to suppress evidence, we review the district court's findings of fact for clear error, and its legal conclusions *de novo*. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). The evidence must be viewed in the light most favorable to the district court's decision. *Ibid*. Factual findings by the district court are only clearly erroneous "when, although there may be evidence to support [them], the reviewing court on the entirety of the evidence is left with the definite and firm conviction that a mistake has been committed." *Ibid*. (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). A lower court's observations regarding witness credibility are "accorded great deference." *Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir. 1987).

We review a district court's application of the federal sentencing guidelines *de novo*, and the trial court's findings of fact under the guidelines for clear error. *See United States v. Jarman*, 144 F.3d 912, 914 (6th Cir. 1998). A district court's decisions on the admission of evidence at sentencing are reviewed for abuse of discretion. *United States v. Bingham*, 81 F.3d 617, 630 (6th Cir. 1996).

**III**

A.  Suppression of the Fruits of the Search of the East 27th St. Address

On appeal, Slater argues for the first time that the investigation into his activities became "a federal investigation" a week before the police obtained a search warrant for his address. Slater notes that ATF Agent Malone testified that he became involved a week prior to the application for a search warrant, that he participated in planning both the search of the house and the stop of the vehicle, and that Malone testified that the case became a federal case a week prior to the application

for a search warrant. Therefore, Slater argues that the warrant must be evaluated under federal standards, including the requirements of Rule 41 of the Federal Rules of Criminal Procedure. *See United States v. Searp*, 586 F.2d 1117, 1119-21 (6th Cir. 1978). Rule 41 authorizes federal law enforcement officers to obtain search warrants from magistrate judges, or in the alternative, state courts of record. Fed. R. Crim. P. 41(b)(1). According to Slater, the evidence found as a result of the search of his residence should be suppressed as it was a state officer, not a federal officer, who obtained the search warrant, and because the warrant was not obtained from a state court of record.

The government argues that Slater waived this argument by failing to raise it before the district court and that it need not be considered by this court. The Supreme Court has held that "[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotations omitted). Had Slater failed to object to a specific finding of the magistrate judge on this issue, he might have waived that objection upon appeal. *See United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001). Without evidence that Slater was aware of this Rule 41 argument at the time of his suppression hearing, however, it is difficult to see how we could decide if his waiver of it was "knowing, intelligent, and voluntary" as required by *United States v. Osborne*, 402 F.3d 626, 630 (6th Cir. 2005) (quotation omitted).

Instead, we find that Slater forfeited his Rule 41 argument and therefore subject it to review for plain error: "Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error

seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quotations omitted).

In this case, it does not appear that required elements of plain error are met. First, it is unclear that there was any error, let alone plain error. We have held that "[w]hile it is important not to stifle cooperation between federal and state officers, we think it clear that federal officers, investigating a federal crime, must comply with the federal rules governing their conduct." *Searp*, 586 F.2d at 1121. However, "[m]ere federal involvement is not enough; there must be significant involvement prior to the search." *United States v. Hunter*, 4 F. App'x 295, 301 (6th Cir. Feb. 9, 2001); *see also Searp*, 586 F.2d at 1119-21. In *Searp,* for example, the investigation was a "joint undertaking between the Kentucky police and the FBI from the beginning," they initiated the investigation together, an FBI agent swore out the affidavit supporting the search warrant in question, there were five FBI agents present at the search, and a federal officer directed the search. *Searp*, 586 F.2d at 1121. On the other hand, in cases where only a single federal agent consulted on an investigation, did not participate in the process of obtaining a search warrant, and a decision to pursue federal charges was not made prior to the search, we have held that the requirements of Rule 41 do not govern the search. *See, e.g.*, *United States v. Alcorn*, 9 F. App'x 426, 431 (6th Cir. May 16, 2001); *Hunter*, 4 F. App'x at 301.

The only evidence Slater presents that federal officers were substantially involved in the investigation is the testimony of ATF Agent Malone at the detention hearing held pursuant to 18 U.S.C. § 3142(f)(2). Slater's main evidence is that when asked on cross-examination: "When did the case officially come from [sic] a state case into a federal case?", Malone replied: "When I was

contacted by the special investigations unit that they had learned through informants that Mr. Slater was distributing significant quantities of narcotics." JA 125. Neither the question nor Malone's reply demonstrates that all parties involved, both state officers and federal agents, considered that the investigation had become a federal investigation and stopped being a state investigation, nor is Malone's answer on cross-examination binding on this court. In fact, Malone's further testimony that he did not become the case agent, that Detective Floyd remained the case agent, that Floyd obtained the warrant, and that Malone's involvement in the investigation was limited all indicate that the state officers still considered it to be a state investigation at the time. Malone's answer to an ambiguous question may merely have indicated that it was at that time that the federal government began considering a concurrent federal investigation and/or federal prosecution. Based solely on this evidence, we cannot find that federal officers were so involved in the state investigation as to mandate that any warrant be obtained pursuant to federal standards. *See Alcorn*, 9 F. App'x at 431; *Hunter*, 4 F. App'x at 301. Had Slater made his Rule 41 objection to the magistrate judge or the district court, more evidence might be available in the record to evaluate his claim.[1]

---

[1] Even if we had found plain error, violations of Rule 41 are not a basis for suppression without an additional showing that (1) there was prejudice in the sense that the search may not have occurred or been so intrusive had the Rule been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of Rule 41. *See Searp*, 586 F.2d at 1125. There is no evidence of intentional disregard of Rule 41 in the record. There is also no reason to believe that had the investigators complied with Rule 41, a search warrant would not have been issued. While the affidavit filed by the police in support of their application for a search warrant was confusingly written in parts, it clearly described a controlled buy from Slater that involved him traveling to the East 27th St. address and information from multiple informants that indicated that Slater sold drugs at the East 27th St. address. Both the magistrate judge and the district judge examined the affidavit and determined that it presented probable cause sufficient for the issuance of a search warrant. *See United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993).

B. Suppression of the Fruits of the Stop and Search of Slater's Automobile

Slater's next argument is that the stop and search of his car violated the Fourth Amendment because there was no probable cause for the stop and search, nor was there an exigency justifying a warrantless stop and search. This argument is to no avail.

First, the stop of an automobile and the subsequent "warrantless search of an automobile based upon probable cause to believe that the vehicle contain[s] evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle [does] not contravene the Warrant Clause of the Fourth Amendment." *California v. Acevedo*, 500 U.S. 565, 569 (1991). Further, this "automobile exception" does not "require[] a separate finding of exigency in addition to a finding of probable cause." *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *accord United States v. Graham*, 275 F.3d 490, 509-11 (6th Cir. 2002). Therefore, the existence or lack thereof of any exigency is irrelevant.

Second, the police did not require probable cause to stop Slater's car. The police are permitted "to stop a person when the officer has reasonable, articulable suspicion that the person *has been*, is, or is about to be engaged in criminal activity." *United States v. Hensley*, 469 U.S. 221, 227 (1985) (quotations omitted). In this case, the police had been informed of Slater's plans by a known informant, who had worked with the police in carrying out a controlled buy, who described the source of his knowledge of Slater's plans (a phone conversation with Slater), and had given the police facts that they corroborated through their own observation (the description of the car Slater would be driving, the time of Slater's trip, and the destination from which Slater would be returning).

This is certainly enough to establish reasonable suspicion. *United States v. Padro*, 52 F.3d 120, 123-24 (6th Cir. 1995) (finding not only reasonable suspicion, but probable cause, under similar circumstances).

Once the police had stopped Slater, a drug-sniffing dog alerted on the trunk of the car. *See Illinois v. Caballes*, 543 U.S. 405 (2005) (holding that a using a drug-sniffing dog during a lawful traffic stop does not violate the 4th Amendment). At that point, there was clearly probable cause to search the trunk.

C. Application of the Sentencing Enhancement

Slater's final argument is that the district court erred in the calculation of his advisory Guideline range by applying the sentencing enhancement of USSG § 3C1.2, based on reckless endangerment during flight.[2]

We have held that while "the question of what constitutes endangerment is a mixed question of law and fact, it is highly fact-based. Therefore, significant deference to the district court is required." *United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005). *See also United States v. Wright*, 19 F. App'x 230, 233 (6th Cir. Aug. 28, 2001) ("Whether a defendant engaged in reckless

---

[2] Slater also argues that the district court should have allowed his putative expert to testify at the sentencing hearing. Beyond citing cases in which expert witnesses were allowed to testified at sentencing hearings, Slater provides no support for the proposition that his particular witness should have been allowed to testify. Further, Slater does not address whether the fact that the district court allowed Slater to enter a report from the putative expert into the sentencing record either renders the claimed error harmless or obviates it entirely. We are not convinced that the district court abused its discretion in refusing to hear live testimony from Slater's witness. *See Bingham*, 81 F.3d at 630.

endangerment in the process of flight is a fact-specific inquiry reviewed for clear error.").  The

Section 3C1.2 enhancement may be applied even if no one was actually injured; the relevant issue

is whether Slater's conduct created a substantial risk of serious injury.  *Hazelwood*, 398 F.3d at 796.

The district court found that Slater acted recklessly when he moved into the left emergency lane and

accelerated to try to get around the dump truck.  The district court further found that even though the

speeds may not have been at the 65 mph speed limit, whenever vehicles come into contact with one

another while moving at a significant speed, such as the 45-50 mph here, the risk of injury is great.

Therefore, the district court found that Slater's actions had met the Section 3C1.2 requirements.

The district court's findings must be given great deference.  While it is true that civilians had

been removed from danger by the well-executed traffic slowdown, Slater's attempt to maneuver

around the dump truck did increase the risk of serious injury to the police officers directly involved

in the stop.  In planning this stop involving a dump truck, an SUV, and several marked police cars,

the police may have hoped that their overwhelming show of force would intimidate Slater

sufficiently to prevent any attempt by him to escape apprehension.  Instead, Slater did try to make

a run for it, however brief, and his maneuvers resulted in a collision between his car and one driven

by a police officer.  We cannot say that the district court was clearly wrong in determining that the

risks of serious injury created by Slater's actions were substantial.

**IV**

For the reasons stated above, we AFFIRM Slater's conviction and sentence.